A05A1128. CARLISLE v. THE STATE.
(615 SE2d 543)

BLACKBURN, Presiding Judge.

Following a bench trial, Janice Marie Carlisle appeals her convictions for stalking and aggravated stalking, contending that the evidence was insufficient to support the verdict. For the reasons set forth below, we affirm the conviction for stalking and reverse the conviction for aggravated stalking.

On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and [Carlisle] no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the verdict will be upheld.

*Warren v. State.*[1]

Viewed in the light most favorable to the verdict, the record shows that Melissa Bailey dated Todd Gibbs for approximately two years, and she ended the relationship with Gibbs in August 1996. After the relationship ended, Gibbs began stalking Bailey. Among many other things, Gibbs followed Bailey, interfered with her creditors, and threatened to kill her animals.

In September 1996, Bailey moved to Gwinnett County to get away from Gibbs, and, by that time, Gibbs had befriended Carlisle to the point that Carlisle gave him complete access to her apartment. Thereafter, on September 27, 1996, Carlisle tried to phone Bailey, whom she knew of only through Gibbs, at her place of work, and, later, at her home. In addition, testimony revealed that Carlisle followed Bailey to her ballet classes, took pictures of Bailey, and gave them to Gibbs.

In early October 1996, Carlisle wrote a certified letter to Bailey with return receipt requested. Although this letter was addressed to Bailey's prior address, it was forwarded, and she was notified at her new Gwinnett address that the envelope was waiting for her to pick up at the post office. When Bailey received this notice, she immediately became fearful that Gibbs was trying to contact her. After Bailey subsequently refused the letter, the forwarding address was conveyed to Carlisle, and, shortly thereafter, Gibbs began contacting Bailey at her Gwinnett apartment. Testimony further revealed that Carlisle sent the letter in order to get Bailey's new address for Gibbs.

Both of these contacts were attempted despite the fact that Carlisle did not know Bailey and had never met her, raising the reasonable inference that she was contacting Bailey to further Gibbs' stalking scheme. At this point in time, Carlisle was aware that Gibbs was stalking Bailey, and he had even told her that he wanted to place

---

[1] *Warren v. State*, 265 Ga. App. 109, 110 (592 SE2d 879) (2004).

a tracking device on Bailey's car. When talking with an acquaintance, Carlisle also indicated that she was helping Gibbs stalk Bailey "for the money."

A stalking warrant was subsequently issued for Gibbs, and, on November 1, 1996, Carlisle called Bailey's father, whom she also had never met, and asked him if the police were trying to arrest Gibbs for stalking. On November 12, 1996, Gibbs was arrested for stalking Bailey; however, Gibbs was released on bond on the condition that he have no contact with Bailey. Sometime after this arrest, Carlisle informed an acquaintance that she knew that Gibbs had been arrested on November 12, 1996 because he violated a restraining order.

On December 13, 1996, Bailey found her apartment door ajar when she returned home. Then, on December 20, 1996, Bailey, who was in her apartment, witnessed Gibbs setting up a ladder to her balcony with Carlisle standing by him. When police arrived at the scene, Carlisle was sitting in front of the apartment complex in a parked car which she had rented while Gibbs attempted to break into Bailey's home with a glass cutter. Carlisle later confirmed that, after arriving at the apartments with Gibbs, she was aware that he was trying to break into Bailey's apartment. Gibbs was arrested at that time and taken into custody, but Carlisle was released.

After he was arrested, Gibbs attempted to call Bailey a number of times. As he was limited to the use of a pay phone, his attempts were to make a collect call assisted by an operator. When Bailey was asked whether she wished to accept the charges, she declined to do so. Additional calls picked up by Bailey's answering machine included the automated collect call greeting.

On December 31, 1996, while Gibbs continued to be incarcerated, phone records show that he called Carlisle from a pay phone in the jail, and, at the same time, a three-way call was made from Carlisle's phone to Bailey's phone. During this same period of time, Gibbs left a message on Bailey's answering machine, and, unlike prior calls, there was no indication that the call was collect.

Carlisle was subsequently arrested and charged with stalking and aggravated stalking based on her contacts with Bailey and her actions to assist Gibbs in contacting Bailey.

1. Carlisle contends that the evidence was insufficient to support her conviction for stalking, contending that the State did not prove venue by failing to elicit testimony concerning the location of the post office to which the letter sent by Carlisle was mailed and viewed by Bailey.

On this count, Carlisle was indicted for:

the offense of Stalking in that [she], in the State of Georgia and the County of Gwinnett, from the 19th day of September,

1996, through the 12th day of November, 1996, the exact dates being unknown . . . , did . . . unlawfully, at 1319 Montrose Parkway, Norcross, Georgia, contact . . . Bailey.

Our statute provides:

A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. For the purpose of this article, the terms "computer" and "computer network" shall have the same meanings as set out in Code Section 16-9-92; the term "contact" shall mean any communication including without being limited to communication in person, by telephone, by mail, by broadcast, by computer, by computer network, or by any other electronic device; and the place or places that contact by telephone, mail, broadcast, computer, computer network, or any other electronic device is deemed to occur shall be the place or places where such communication is received. For the purpose of this article, the term "place or places" shall include any public or private property occupied by the victim other than the residence of the defendant. For the purposes of this article, the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made.

OCGA § 16-5-90 (a) (1).

Venue is a jurisdictional fact that the prosecution must prove beyond a reasonable doubt. "When there is insufficient evidence of venue, the verdict rendered is contrary to law and without sufficient evidence to support it." *Graves v. State.*[2]

The evidence of venue in this case was sufficient. It is undisputed that, as a result of Carlisle's mailing the certified letter, the post office attempted to deliver the letter to Bailey's apartment, which was established to be in Gwinnett County. Because Bailey was not home,

---

[2] *Graves v. State*, 269 Ga. 772, 773 (1) (504 SE2d 679) (1998).

the post office delivered a notice to Bailey's apartment telling her that the certified letter was waiting for her. The delivery of this notice caused Bailey to become fearful that Gibbs was once again trying to contact her. At the point that she received notice of the waiting letter, Carlisle's contact with Bailey had already occurred. As such, venue was properly established.

Moreover, the record reveals that the certified letter was not the only contact Carlisle had with Bailey during the period covered by the indictment. On or around September 27, 1996, Carlisle contacted Bailey at her place of work and at her home in Gwinnett County. The record further indicates that, when she made these calls, Carlisle was aware of Gibbs' intentions toward Bailey, raising a clear inference that she was assisting Gibbs' efforts to stalk Bailey. The record also established, once again, that Bailey was placed in fear by these calls. These acts, of which venue is not in question, would also support Carlisle's conviction for stalking. Accordingly, the evidence was sufficient to support the verdict.

2. Carlisle contends that the evidence was insufficient to support her conviction for aggravated stalking, arguing that, as a matter of law, she could not be convicted for aggravated stalking as a party to a crime. Although we disagree with this argument, we do find that the evidence was insufficient under the specific facts of this case.

Carlisle was specifically indicted for

the offense of Aggravated Stalking in that ... on the 20th day of December, 1996, said date being a material element, [she] did then and there unlawfully ... in violation of a condition of [Gibbs'] pretrial release, contact . . . Bailey . . . for the purpose of intimidating and harassing [her].

Our statute provides:

A person commits the offense of aggravated stalking when such person, in violation of a bond to keep the peace posted pursuant to Code Section 17-6-110, temporary restraining order, temporary protective order, permanent restraining order, permanent protective order, preliminary injunction, good behavior bond, or permanent injunction or condition of pretrial release, condition of probation, or condition of parole in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of

the other person for the purpose of harassing and intimidating the other person.

OCGA § 16-5-91 (a).

In turn, our statutory "party to a crime" law states: "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). A person is concerned in the commission of a crime only if he "[i]ntentionally aids or abets in the commission of the crime." OCGA § 16-2-20 (b) (3).

Based on these statutory provisions, as limited by the language of the indictment, in order to be convicted for aggravated stalking as a party to Gibbs' crime, Carlisle would (1) have to have known that Gibbs was subject to a condition of bond to stay away from Bailey after November 12, 1996 and (2) continue to intentionally aid and abet his stalking of Bailey. See, e.g., *Clyde v. State*[3] (one who knowingly provides firearm to a felon may be convicted of possession of firearm by said felon as a party to a crime).

In this case, however, there is no evidence of record that, on December 20, 1996, Carlisle was, in fact, aware of Gibbs' condition of bond requiring him to stay away from Bailey. Although there is some evidence that, in general, she knew that Gibbs was supposed to stay away from Bailey and that she was aware of a restraining order prior to Gibbs' November 12, 1996 arrest, this evidence falls short of authorizing a finding that Carlisle was aware that Gibbs was specifically under a court ordered condition of bond not to contact Bailey, as alleged in the indictment. As such, we are constrained to find that the evidence in this case did not meet the material allegations of the indictment, and Carlisle's conviction for aggravated stalking cannot stand. "Inasmuch as the evidence was sufficient to support a conviction for the lesser included offense of [stalking, however], we remand the case with direction that conviction be entered on that offense and [Carlisle] be sentenced accordingly." (Footnote omitted.) *Clark v. State*.[4] See also *Hill v. State*.[5]

Finally, we note that, contrary to Carlisle's arguments otherwise, our decision in *Salter v. Greene*[6] does not support her argument that she could never be convicted for aggravated stalking as a party to a crime. In *Salter*, the defendant's husband had been placed on bond for battering her, and, as a condition of this bond, the trial court required

---

[3] *Clyde v. State*, 276 Ga. 839 (584 SE2d 253) (2003).

[4] *Clark v. State*, 245 Ga. App. 267, 269-270 (537 SE2d 742) (2000).

[5] *Hill v. State*, 253 Ga. App. 658 (560 SE2d 88) (2002).

[6] *Salter v. Greene*, 226 Ga. App. 384 (486 SE2d 650) (1997).

defendant's husband to stay away from her. Despite this order, the defendant voluntarily chose to spend time with her husband, and the trial court subsequently found her in contempt for violating her husband's condition of bond. In that situation, we held: "The appellant was not subject to the bond condition, which, in fact, was issued for her protection. As a matter of law, the appellant cannot be found in contempt for violating a condition of another person's bond." Id. at 386 (2). *Salter* is wholly distinguishable from this case, and it is limited to the facts therein.

*Judgment affirmed in part, reversed in part, sentence vacated and case remanded with direction. Miller and Bernes, JJ., concur.*

DECIDED MAY 27, 2005 —
RECONSIDERATION DENIED JUNE 8, 2005 — ▮▮▮▮▮▮

*Brian Steel*, for appellant.
*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellee.