A05A1157. MASKIVISH v. THE STATE.
(624 SE2d 160)

Barnes, Judge.
Following the denial of his motion for new trial, Charles Maskivish appeals his jury convictions for burglary, harassing phone calls, terroristic threats, stalking, aggravated stalking, and the lesser included offense of criminal trespass. Maskivish raises several issues on appeal and for the reasons set forth below, we affirm.

On appeal, we view the evidence

in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

(Citation and punctuation omitted.) *Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995).

So viewed, the evidence establishes that after dating for over one year, Maskivish and his girlfriend began to have problems. On several occasions he accused her of cheating and threatened to kill her. He also threatened to rape and kill her seven-year-old daughter. After the girlfriend ended the relationship, the incidents continued to escalate. Maskivish's girlfriend filed for a temporary protective order on July 10, and on July 13 and July 17, 2000, she swore out criminal warrants against him for harassing telephone calls and burglary. On July 17, Maskivish was arrested on the criminal warrants. Following a hearing, the court issued the protective order on August 2, 2000. Maskivish was not present for the hearing, but his retained counsel appeared on his behalf.

Maskivish was later indicted for burglary, criminal damage to property in the second degree, harassing telephone calls, terroristic threats, stalking and aggravated stalking. Following a jury trial, he was found guilty of criminal trespass instead of criminal damage to property and of all the other counts. Maskivish's motion for new trial was timely filed, and following its denial, this appeal was filed.

1. Maskivish first argues that the trial court erred in denying his directed verdict motion because the evidence was insufficient to support the aggravated stalking conviction, and that the State had failed to prove that his conduct was for the purpose of harassing and intimidating the victim.

Our standard of review for the denial of a motion for a directed verdict of acquittal is the same as our standard for reviewing the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wright v. State*, 228 Ga. App. 779 (1) (492 SE2d 680) (1997).

> A person commits the offense of aggravated stalking when such person, in violation of a . . . temporary restraining order, . . . follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

OCGA § 16-5-91 (a).

(a) Count 6 of the indictment charged that Maskivish had "between the 2nd day of August, 2000, and the 4th day of August, 2000" contacted his girlfriend in violation of a temporary protective order. Although Maskivish argues that he wrote the letters in question before the August 2 hearing on the protective order, and that he had no notice of the hearing, the evidence established that his girlfriend received the letters after the protective order was in effect. The fact that Maskivish contacted his girlfriend in violation of a temporary restraining order with the requisite intent was sufficient to sustain his conviction for aggravated stalking. OCGA § 16-5-91 (a). Further, the evidence belies Maskivish's contention that nothing showed that he had notice of the temporary protective order. In fact, in one of the letters mailed to his girlfriend, Maskivish specifically noted in a post script that the letter was written "1 day before TPO hearing." Moreover, the hearing was attended by Maskivish's attorney who signed the order on his behalf. Whether or not the letters were written when Maskivish maintains they were was a question of fact for the jury to resolve. See *Hooper v. State*, 223 Ga. App. 515, 517 (2) (478 SE2d 606) (1996).

(b) Maskivish next argues that the State failed to prove that his conduct was for the purpose of harassing and intimidating the victim.

"[T]he term 'harassing and intimidating' means a knowing and willful course of conduct directed at a specific person which causes

emotional distress by placing such person in reasonable fear for such person's safety . . . and which serves no legitimate purpose." OCGA § 16-5-90 (a) (1).

In this case, Maskivish violated a protective order prohibiting him from contacting the victim when he sent two letters to her. Even though the letters were not overtly threatening, given the rambling nature of the letters, which included disparaging references about the victim's appearance, references to Maskivish's infidelities, and a suggestion that the victim be tested for HIV, a rational jury could have found beyond a reasonable doubt that such acts were intended to harass and intimidate and reasonably placed the victim in fear for her safety. See *Jagat v. State*, 240 Ga. App. 822, 823 (1) (525 SE2d 388) (1999).

2. Maskivish also argues that he was entitled to a directed verdict on the terroristic threats count because the only evidence of the threat was his girlfriend's uncorroborated testimony. We disagree.

"A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence . . . with the purpose of terrorizing another. . . . No person shall be convicted under this subsection on the uncorroborated testimony of the party to whom the threat is communicated." OCGA § 16-11-37 (a). However, "[s]light circumstances may be sufficient for corroboration and the question of corroboration is one solely for the jury." (Citations and punctuation omitted.) *Ellis v. State*, 176 Ga. App. 384, 386 (3) (336 SE2d 281) (1985). Furthermore, if there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value. Id.

Here, Maskivish was accused of threatening to rape and kill the girlfriend's daughter, and although the threat was only communicated to the girlfriend, his conduct leading up to the terroristic threat may constitute corroboration. See *Drew v. State*, 256 Ga. App. 391, 392 (1) (568 SE2d 506) (2002). Here, there was evidence that Maskivish had made other verbal threats to his girlfriend and violated a protective order, and that his girlfriend was afraid of him. This constitutes some evidence corroborating the girlfriend's testimony about the threat.

3. Maskivish also contends that the directed verdict of acquittal on the burglary charge should have been granted because the evidence was insufficient to support his conviction on that charge. We do not agree.

The evidence presented at trial demonstrated that someone pried open the glass sliding doors of the girlfriend's house and stole all of her personal files. After the fact, Maskivish called his girlfriend and asked her about the files, and then stated, "They're gone aren't they?" The only item taken in the break-in was the files.

As noted earlier, in reviewing the denial of a motion for a directed verdict, the evidence is viewed in the light most favorable to the jury's verdict and our determination is only whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Wright v. State*, supra, 228 Ga. App. at 779. "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another. . . ." OCGA § 16-7-1 (a).

It is undisputed that a burglary occurred. Here, the issue is whether the evidence was sufficient to establish beyond a reasonable doubt that Maskivish was the burglar. Maskivish contends that the evidence was circumstantial and did not exclude every reasonable hypothesis of his innocence. Therefore, he contends, the evidence was insufficient to warrant conviction. See OCGA § 24-4-6.

Even if we characterize the evidence as circumstantial, Georgia law requires only that the proved facts exclude *reasonable* hypotheses that the crime could have been committed by someone else. *Underwood v. State*, 221 Ga. App. 93, 94 (1) (470 SE2d 699) (1996). Questions of reasonableness are generally decided by the jury, and we will not disturb the jury's finding of guilt unless it is unsupportable as a matter of law. Id.

Considering the evidence of the couple's troubled relationship, the fact that only files were stolen, and that Maskivish knew the files were missing, we conclude that the evidence is sufficient to authorize a rational trier of fact to find Maskivish guilty of burglary beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. Maskivish next argues that the State failed to establish a sufficient connection between the crime charged and the similar transaction. We do not agree.

Maskivish contends that the conduct involving the similar transaction witness was not similar to the conduct alleged in the indictment because the actual testimony at trial was different from that proffered. We find no merit to his contention.

Absent an abuse of discretion, after the court conducts a similar transaction hearing that complies with *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991), the trial court's decision to admit similar transaction evidence will not be disturbed. *Brooks v. State*, 230 Ga. App. 846 (1) (498 SE2d 139) (1998). Similar transactions need not be identical to the offense being tried but must show sufficient similarity or connection between the independent incidents and the offense at issue. Id. at 847 (1).

Following a hearing, the trial court ruled admissible certain evidence regarding Maskivish's relationship with his ex-wife. It allowed Maskivish's ex-wife to testify

as to forced entry into the home, the fact that she obtained a Restraining Order, the events around the time she obtained the Restraining Order, including his name-calling, picking on bodily faults. The threats that [Maskivish] made against both she, as well as her children. The accusations [of] her unfaithfulness. The fact that [Maskivish] pled guilty to stalking, as well as the fact that [Maskivish] made threat [sic] — sexual comments about his own daughter and the fact that he cannot wait until she turned sixteen.

This evidence

closely paralleled that of [the ex-girlfriend] in the case on trial. In cases of domestic violence, prior incidents of abuse against family members or sexual partners are more generally permitted because there is a logical connection between violent acts against two different persons with whom the accused had a similar emotional or intimate attachment.

(Footnote omitted.) *Thomas v. State*, 246 Ga. App. 448, 449 (1) (540 SE2d 662) (2000). Accordingly, we find no error in the trial court's ruling that the evidence was admissible.

Likewise, we find no merit to Maskivish's contention that his ex-wife's trial testimony was different from that proffered at the hearing. Our review of the testimony shows no relevant deviation from the trial court's ruling. Moreover, Maskivish never objected to the testimony on this ground, and thus this issue was not preserved for review. "If counsel desires to preserve an objection upon a specific point, the objection must be on that specific ground. Otherwise, this court will not consider it." (Citation and punctuation omitted.) *Arnold v. State*, 236 Ga. App. 380, 383 (3) (511 SE2d 219) (1999).

5. Maskivish also complains that his retained trial counsel was ineffective. He argues that trial counsel did not properly prepare or conduct his trial because counsel was focused on his impending swearing-in as a juvenile court judge. Maskivish specifically contends that trial counsel was ineffective in the enumerated areas, as well as in failing to file written requests to charge, was too perfunctory in making his motion for directed verdict, failed to call any witnesses, failed to notify Maskivish about his judgeship, and "[o]ther similar acts of shortcutting."

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable

likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). "Decisions about which witnesses to call are a matter of trial strategy, and tactical errors do not amount to ineffective assistance of counsel." (Footnote omitted.) *Weathersby v. State*, 263 Ga. App. 341, 347 (6) (f) (587 SE2d 836) (2003).

A reviewing court need not address both components of an ineffective assistance of counsel claim if the appellant makes an insufficient showing of one, and the components need not be addressed in any particular order. *Thompson v. State*, 191 Ga. App. 906 (1) (383 SE2d 339) (1989). Thus, pretermitting whether the performance of Maskivish's trial defense counsel was deficient within the meaning of *Strickland*, the question remains whether a reasonable probability exists that the outcome of his case would have been different but for counsel's performance. *Young v. State*, 191 Ga. App. 651, 653 (2) (382 SE2d 642) (1989). After examining the record and transcript in their totality and measuring the strength of the evidence against Maskivish's allegations of ineffectiveness, we find no reasonable probability exists that the outcome would have been different.

Moreover, in reviewing the totality of trial counsel's representation, it appears that appellant's trial counsel rendered reasonably effective services to appellant throughout the trial. Trial counsel had practiced law since 1987 and was death penalty qualified in Georgia and Florida, in addition to spending eight years as a public defender before going into private practice. Although counsel took his seat as a juvenile judge one day after Maskivish's trial, counsel testified that he was fairly certain that he told Maskivish about his appointment. He further testified that the trial had been continued twice, in the fall of 2000 and again in March 2001, and that when it came up again in June 2001, he was in the interviewing process and was assured that Maskivish's trial would be number two on the next jury trial docket. Maskivish presents no evidence that trial counsel's imminent new job hindered his ability to provide reasonably effective counsel, and prejudiced Maskivish's case. Although Maskivish complains that his attorney was ineffective for failing to call certain witnesses to testify, trial counsel testified that he subpoenaed Maskivish's mother, sister, and father as requested. Only the father showed up, and then asked to be excused because he was not feeling well. Counsel testified that

he released the father upon Maskivish's approval. To the extent that Maskivish's testimony contradicted his trial counsel, "it is the function of the trial court at the hearing on the motion for new trial to determine witness credibility and to resolve any conflicts in the testimony." (Citation omitted.) *Mobley v. State*, 264 Ga. 854, 856 (2) (452 SE2d 500) (1995).

Accordingly, we are satisfied that Maskivish has not met his burden under *Strickland v. Washington*, supra, 466 U. S. 668, of showing that his counsel's performance was deficient and that this deficient performance prejudiced his defense.

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED NOVEMBER 3, 2005 —
RECONSIDERATION DENIED DECEMBER 7, 2005.

*Flint & Connolly, John F. Connolly*, for appellant.

*Garry T. Moss, District Attorney, Thomas J. Bowers III, Assistant District Attorney*, for appellee.

