## S05G1642. THE STATE v. CARLISLE.
### (631 SE2d 347)

SEARS, Chief Justice.

We granted certiorari in this case to consider the interplay between the doctrine of parties to a crime and the crime of aggravated stalking.[1] A person commits the crime of aggravated stalking when she stalks another person while under a court order not to do so.[2] This case raises the issue whether a person may be found guilty as a party to the crime of aggravated stalking if she assists a second person in stalking the victim but is unaware that a court order has been imposed on the second person against stalking the victim. We conclude that, absent evidence that the person knew of a court order that had been imposed on the second person, the person may not be found guilty as a party to the crime of aggravated stalking. We also conclude, however, that the evidence in the present case would have

---

[1] *Carlisle v. State,* 273 Ga. App. 567 (615 SE2d 543) (2005).
[2] OCGA § 16-5-91 (a).

authorized the trier of fact to find that the defendant, Janice Carlisle, was aware of a court order requiring her co-defendant to stay away from the victim.

1. Under OCGA § 16-5-90 (a) (1), "[a] person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." Under OCGA § 16-5-91 (a), a person commits the offense of aggravated stalking when, in violation of certain types of court orders[3] that "in effect prohibit[ ] the behavior described in this subsection," she "follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."

In the present case, Count 3 of the indictment charged Carlisle and her co-defendant, Todd Gibbs, with the offense of aggravated stalking in that, on December 20, 1996, they unlawfully contacted the victim "without her consent for the purpose of harassing and intimidating [her]" and that they did so "in violation of a condition of pretrial release." At trial, the State introduced evidence that, on November 12, 1996, Gibbs was arrested for stalking the victim; that Gibbs was granted bond the same day; and that, as a condition of pretrial release, Gibbs was ordered to stay away from the victim. There was no evidence of any other order that prohibited Gibbs from contacting the victim, and no order was ever entered against Carlisle prohibiting her from contacting the victim.

After a bench trial, the trial court found Carlisle guilty of aggravated stalking based on evidence that on December 20, 1996, Carlisle assisted Gibbs in stalking the victim. On appeal, the Court of Appeals reversed. It held that the evidence did not prove that, at the time of the stalking incident on December 20, "Carlisle was aware that Gibbs was specifically under a court ordered condition of bond not to contact Bailey, as alleged in the indictment."[4]

2. On certiorari, the State contends that, to convict Carlisle of aggravated stalking, it did not have to prove that she was aware of any order requiring Gibbs to stay away from the victim. Instead, the State contends that it merely had to prove that Gibbs was aware of

---

[3] These specified court orders are:
a bond to keep the peace posted pursuant to Code Section 17-6-110, temporary restraining order, temporary protective order, permanent restraining order, permanent protective order, preliminary injunction, good behavior bond, or permanent injunction or condition of pretrial release, condition of probation, or condition of parole.
OCGA § 16-5-91 (a).
[4] *Carlisle*, 273 Ga. App. at 572.

the November 12 order and that Carlisle assisted Gibbs in his subsequent efforts to stalk the victim.

In *Clyde v. State*,[5] we addressed an issue similar to the one here. There, one of Clyde's co-defendants was a convicted felon and had used a firearm to commit the crimes at issue. Clyde was convicted as a party to the crime of felon in possession of a firearm in that, according to the State, he assisted his co-defendant felon in committing the crimes. On appeal, we concluded that, because Clyde was not aware that his co-defendant was a felon, he could not be convicted as a party to the crime of possession of a firearm by a convicted felon.[6] Similarly, here, we conclude that Carlisle may not be convicted of aggravated stalking without knowing that a court order prohibited Gibbs from contacting the victim.

However, to the extent the Court of Appeals's decision[7] can be read to require that Carlisle know of the exact type of order — here a condition of bond — that required Gibbs not to contact the victim, we disapprove of that holding. In this regard, in *Clyde*, we held that Clyde could have been convicted as a party to the crime of possession of a firearm by a convicted felon if he had known that his co-defendant was a felon.[8] We did not hold that the State had to prove that Clyde was aware of the specific felony for which his co-defendant had been convicted. Similarly, here, we conclude that Carlisle did not have to know of the specific type of court order that was in effect on December 20, 1996, when she assisted Gibbs in stalking the victim. Rather, she simply had to be aware that a court order was in effect that prohibited Gibbs from contacting the victim.

As for whether Carlisle was aware that a court order prohibiting Gibbs from contacting the victim was in effect on December 20, 1996, we conclude that, viewing the record in the light most favorable to the finder of fact, it was sufficient for a rational trier of fact to find beyond a reasonable doubt that Carlisle was aware of such an order.[9]

To begin, the victim testified that she took out only two warrants for Gibbs's arrest. She testified that she had the first one withdrawn because, after it issued, Gibbs's family got involved, and she thought she therefore might not have to pursue legal action. The second warrant was issued on November 1, 1996, and resulted in Gibbs's arrest on November 12, 1996, and in the issuance of the condition of

---

[5] 276 Ga. 839, 840 (584 SE2d 253) (2003).

[6] Id.

[7] As previously noted, the Court of Appeals held that the evidence was not sufficient to show that "Carlisle was aware that Gibbs was specifically under a court ordered *condition of bond* not to contact Bailey, as alleged in the indictment." *Carlisle*, 273 Ga. App. at 572.

[8] *Clyde*, 276 Ga. at 840.

[9] *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d 560) (1979).

bond that directed Gibbs to have no contact with the victim. Gibbs was arrested for the second and last time on December 20, 1996.

Dana Roberts testified that she lived in the same apartment complex as Gibbs and Carlisle in the fall of 1996 and became friends with them. Roberts testified that Carlisle told her that Gibbs had violated a restraining order, and that that conversation took place between Gibbs's first and second arrests. Moreover, Roberts stated that she discussed the restraining order with Carlisle in the context of Gibbs's need for psychiatric care. More specifically, Roberts testified that, in the same conversation that Carlisle mentioned the restraining order, Carlisle told her that Gibbs "was trying to get the charges dropped, that if he went to psychiatric care — I remember her [Carlisle] talking about him being in a psychiatric unit or psychiatric hospital." Roberts added that Carlisle was "elaborating on [Gibbs's] psychiatric needs and that he had violated a restraining order." Other evidence established that Gibbs sought psychiatric care after he discovered on November 1 that the victim had taken a warrant out for his arrest; that he was discharged from that psychiatric care on November 12; that he was then arrested and posted bond; and that he sought psychiatric care again after he posted bond on November 12.[10]

The issue is whether Roberts's testimony raises an inference that Carlisle knew of a restraining order[11] against Gibbs that was in effect at the time of the December 20 stalking incident. Because Roberts testified that Gibbs *had* violated a restraining order and because it appears that the only time that Gibbs violated a restraining order was when he stalked the victim on December 20, it could be inferred that Carlisle did not know about the restraining order until after December 20. However, because Roberts testified that the discussion about the restraining order occurred between Gibbs's first arrest on November 12 and his second arrest on December 20, it could be inferred that Carlisle had knowledge of the restraining order before the December 20 incident. Moreover, because the only time that Gibbs received psychiatric care was before the December 20 incident, Roberts's testimony that the discussion regarding the restraining order occurred in the context of a discussion about Gibbs's need for psychiatric care buttresses the inference that Carlisle knew about the restraining order before the December 20 incident.

The testimony of Cathy Clark also buttresses this inference. Clark testified that in 1997 Carlisle told her about her efforts to help

---

[10] The record does not establish the date that Gibbs was discharged from this second round of psychiatric care, but a witness testified that this second round of psychiatric care took place in Baltimore, Maryland, and that Gibbs had returned to Atlanta by December 13.

[11] We use the phrase "restraining order" in a generic sense to indicate an order requiring someone to stay away from another person.

Gibbs stalk the victim and told her that she knew that Gibbs was not "supposed to be around the girl, that he had already been charged or arrested for stalking the young lady." Because Gibbs was arrested and did not get out of prison after December 20, 1996; because Clark's conversation with Carlisle concerned Carlisle's and Gibbs's efforts to stalk the victim; and because Carlisle and Gibbs would not be concerned about whether Gibbs was supposed to be around the victim after he was in jail, it can be inferred that Carlisle acquired her knowledge that Gibbs was not supposed to be around the victim sometime before Gibbs's December 20 arrest. Moreover, a rational trier of fact could further conclude that, since an arrest does not by itself contain any restraint against being around the victim of the crime; that, since the November 12 order imposed such a specific restraint on Gibbs; and that since Carlisle told Roberts of a restraining order, Carlisle must have been aware of the court order before December 20, 1996.

Finally, evidence that Carlisle had intimate knowledge of Gibbs's activities further buttresses the inference that Carlisle knew of an order requiring Gibbs to stay away from the victim before she and Gibbs stalked the victim on December 20. The record shows, for instance, that, when officers attempted to arrest Gibbs on November 1, Carlisle notified Gibbs before the police could arrest him, enabling him to avoid arrest by checking himself into a psychiatric hospital. Moreover, the record shows that Carlisle had Gibbs's parents, who lived in Baltimore, staying at her apartment on November 12, the day that Gibbs was discharged from the first psychiatric hospital and arrested. Once Gibbs posted bond on November 12, he immediately left Atlanta with his parents to go to Baltimore so that he could be admitted to a second psychiatric hospital.

Based on Clark's and Roberts's testimony, on the fact that Carlisle was intimately involved in Gibbs's activities during the fall of 1996, and on the fact that the only order that could be understood as a restraining order was not entered until November 12, 1996, we conclude that, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have concluded that Carlisle had knowledge of an order requiring Gibbs to stay away from the victim before the stalking incident on December 20.

Accordingly, Carlisle's conviction for aggravated stalking is authorized by the evidence and the Court of Appeals's holding to the contrary is reversed.

*Judgment reversed. All the Justices concur, except Benham, J., who dissents.*

BENHAM, Justice, dissenting.

I am in agreement with the decision of the Court of Appeals that Carlisle's conviction for aggravated stalking must be reduced to the included offense of stalking because the evidence presented did not meet the material allegations of the indictment charging aggravated stalking. Accordingly, I respectfully dissent to the majority's reversal of the judgment of the Court of Appeals.

DECIDED JUNE 12, 2006 —
RECONSIDERATION DENIED JULY 14, 2006.

*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellant.
*Brian Steel*, for appellee.