697 S.E.2d 898 (2010)
BOWEN
v.
The STATE.
No. A10A0769.
Court of Appeals of Georgia.
July 6, 2010.
*899 Meredith G. Brasher, for appellant.
J. David Miller, Dist. Atty., Laura A. Wood, Asst. Dist. Atty., for appellee.
BERNES, Judge.
A jury found Anthony Bowen guilty of aggravated stalking, OCGA § 16-5-91(a). On appeal, Bowen contends that the trial court erred in denying his motion for a directed verdict and in denying his motion for a mistrial made after his character had allegedly been wrongfully placed in evidence. For the reasons that follow, we affirm.
*900 1. On appeal from the denial of a motion for a directed verdict, the standard of review is the same as that for reviewing the sufficiency of the evidence to support a conviction. See Maskivish v. State, 276 Ga.App. 701, 702(1), 624 S.E.2d 160 (2005). The evidence is viewed in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. We do not weigh the evidence or determine witness credibility; as long as there is some evidence, even though contradicted, to establish the commission of the crime, we will uphold the jury's verdict. See Holmes v. State, 291 Ga.App. 196, 197(1), 661 S.E.2d 603 (2008); Maskivish, 276 Ga. App. at 701, 624 S.E.2d 160.
So viewed, the evidence presented at trial showed that the victim, J.T., was 19 years old at the time of trial and suffered from Asperger's Syndrome. The syndrome caused her to experience a development delay in her social skills. When J.T. was 14 years of age, she had a sexual encounter with Bowen and thereafter became pregnant and gave birth to Bowen's child.
Bowen was charged with statutory rape as a result of his sexual encounter with J.T. Because Bowen's encounter with J.T. violated a probation condition imposed upon him in a prior case, Bowen was also charged with aggravated stalking. On July 22, 2004, Bowen entered guilty pleas to the statutory rape and aggravated stalking charge. As part of his sentence, a permanent restraining order was issued, which prohibited Bowen from having any contact with J.T. "in any form or fashion whatsoever" and directed him not to "call, e-mail or write letters to [her]" Bowen was served with a copy of the permanent restraining order while he was in prison. A state probation officer discussed the provisions of the restraining order with Bowen; Bowen stated that he understood the restraining order and signed a written document acknowledging that he had received it.
Bowen nevertheless continued to contact J.T. while he was in prison. J.T. and her mother stated that Bowen sent at least four letters to J.T. at her residence. In August 2005, Bowen sent J.T. the letter at issue in the present case, in which he wrote, "I know your mother is going to tell the police about me [writing] you so I really don't care ... I might be coming home real soon!" Because J.T. had reacted adversely to Bowen's previous letters, her mother would not allow J.T. to read it. Instead, J.T.'s mother read the letter and discussed its contents with J.T.
Bowen had sent another letter to J.T. in February 2004. In that letter, Bowen told J.T. he wanted to marry her, begged her to write him back, and told her to use a false last name so that the letter would not be rejected by prison officials. When J.T. received and read the February letter from Bowen, she became very upset. She testified at trial that she did not want to have any contact with Bowen and was afraid that he would get out of prison and harm her and her family. J.T. did not respond to any of Bowen's letters. Her mother forwarded the letters to law enforcement officials.
The evidence at trial also showed that Bowen sent J.T. messages through her classmates at school and that he called J.T. at her residence on many occasions. One day, he left as many as six voice messages on J.T.'s home telephone.
Following the presentation of the above evidence at trial, the jury found Bowen guilty of aggravated stalking.
(a) Bowen contends that the trial court erred in denying his motion for a directed verdict made after the state presented its evidence. He contends the evidence is insufficient to support the verdict. We disagree.
"A person commits the offense of aggravated stalking when such person, in violation of a ... permanent restraining order ... contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." OCGA § 16-5-91(a). Contact that is "harassing and intimidating" is defined as
a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety *901 or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.
OCGA § 16-5-90(a)(1). An overt threat of death or bodily injury is not required. See id.; Phillips v. State, 278 Ga.App. 198, 199(1), 628 S.E.2d 631 (2006).
Here, the evidence established that a permanent restraining order had been entered that prohibited Bowen from having any contact with J.T. Bowen violated that order by sending the August letter to J.T., which caused her to fear for her and her family's safety. Although Bowen argues that there was no evidence that contact occurred since J.T. had not read the August letter at issue, his contention is without merit. Bowen's contact with the victim occurred at the point when the letter was mailed and delivered to J.T.'s residence. See, e.g., Carlisle v. State, 273 Ga.App. 567, 571(1), 615 S.E.2d 543 (2005) (holding that the defendant's contact with the victim had already occurred at the point that the victim received a delivery notice of the defendant's letter), rev'd on other grounds State v. Carlisle, 280 Ga. 770, 631 S.E.2d 347 (2006). J.T. testified that the letter was retrieved from the mailbox and that she was aware that it had been sent to her from Bowen. While it is true that J.T. was not allowed to read the letter, the letter was read by her mother, who discussed its contents with J.T.
Bowen further argues that since J.T. had read only one of his prior letters, the evidence failed to establish a pattern of harassing and intimidating behavior. Again, his argument is unavailing. Bowen's course of conduct and pattern of harassing and intimidating behavior were established by evidence that Bowen had sent at least four letters to J.T.; had a prior conviction for aggravated stalking based upon his act of sending a letter to J.T. in violation of a prior restraining order; had sent messages to J.T. through her classmates at school; and had called and left numerous telephone messages at J.T.'s residence. Notwithstanding the fact that J.T. had only read one of Bowen's letters, she was aware of all of them, had discussed the letters with her mother, and was placed in fear for her safety as a result of the ongoing contacts in violation of the court-imposed restraining orders. J.T.'s mother testified that after receiving each letter, J.T. became less convinced that the local authorities would be able to protect her from Bowen. This evidence of Bowen's continuing unauthorized contacts with J.T. and repeated violations of the restraining orders established a pattern of harassing behavior and authorized his conviction in this case. See Holmes, 291 Ga. App. at 197-198(1), 661 S.E.2d 603; Fly v. State, 229 Ga.App. 374, 376(1), 494 S.E.2d 95 (1997).[1] See also Jerusheba v. State, 226 Ga.App. 696, 697-698(1), 487 S.E.2d 465 (1997) (stalking conviction authorized based upon evidence that defendant had sent several harassing and sexually explicit letters to the victim); Adkins v. State, 221 Ga.App. 460, 471 S.E.2d 896 (1996) (stalking conviction authorized based upon evidence that defendant sent harassing letters to the victim and her parents).
(b) Bowen further contends that his motion for directed verdict was erroneously denied since the evidence failed to prove beyond a reasonable doubt that venue was properly laid in Lowndes County. Again, we disagree.
Our Georgia Constitution requires that venue in all criminal cases must be laid in the county in which the crime was allegedly committed. Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt. The [s]tate may establish venue by whatever means of proof are available to it, and it may use both direct and circumstantial evidence. On appeal, we view the evidence *902 in the light most favorable to the verdict and determine whether the evidence was sufficient to permit a finding that the crime was committed in the county where the defendant was indicted.
(Citations and punctuation omitted.) Miller v. State, 298 Ga.App. 792, 794-795(2), 681 S.E.2d 225 (2009). See also Moody v. State, 279 Ga.App. 457, 457-459, 631 S.E.2d 473 (2006); Carlisle, 273 Ga.App. at 570(1), 615 S.E.2d 543.
This case was indicted and tried in Lowndes County. Viewed in the light most favorable to the verdict, the trial evidence showed that J.T. and her family resided in Lowndes County. J.T.'s mother testified that Bowen had sent the letter at issue in this case to their residence and that the letter was retrieved from the mailbox at their residence. This evidence authorized the jury to find that venue in Lowndes County was properly established. See Carlisle, 273 Ga. App. at 570-571(1), 615 S.E.2d 543 (venue supporting defendant's aggravated stalking conviction was established by evidence that defendant mailed a letter to the victim's apartment in that county).
2. Bowen also contends that the trial court erred in denying his motion for a mistrial based on an allegation that his character was impermissibly placed into evidence. When J.T. was asked why she was afraid of Bowen, she responded that she was afraid "[t]hat [Bowen] will come to my house, hurt me and my family. He's escaped from jail before." The prosecutor immediately redirected J.T.'s testimony by asking her additional questions unrelated to the jail escape and concluded her direct examination. Bowen's counsel thereafter requested that the issue be addressed outside of the jury's presence, objected to the testimony mentioning Bowen's jail escape, and requested a mistrial. The trial court denied the motion for mistrial, noting that the challenged testimony was immediately redirected and was not egregious enough to warrant a mistrial. The trial court offered to give the jury a curative instruction, but Bowen's counsel declined the offered remedial action.
Pretermitting whether Bowen's objection and motion for a mistrial were timely,[2] the trial court did not err in denying the motion. "A trial court has the discretion to grant a mistrial or to give curative instructions, and this court will only interfere with that discretion when granting a mistrial is essential to the preservation of the right to fair trial." (Citation and punctuation omitted.) Hensley v. State, 300 Ga.App. 136, 137, 684 S.E.2d 673 (2009). Because the challenged testimony was no more than a fleeting comment, the trial court was authorized to find that its effect was not prejudicial enough to warrant a mistrial in this case. See id. at 137-138, 684 S.E.2d 673; Gordian v. State, 261 Ga.App. 75, 77(2), 581 S.E.2d 616 (2003). And, "[s]ince defense counsel declined the trial court's offer to give curative instructions to the jury, appellant will not now be heard to complain." (Citation and punctuation omitted.) Pickren v. State, 272 Ga. 421, 426(9), 530 S.E.2d 464 (2000). See also Hood v. State, 302 Ga.App. 99, 100, 690 S.E.2d 250 (2010); Traylor v. State, 275 Ga.App. 20, 21, 619 S.E.2d 746 (2005).
Judgment affirmed.
BARNES, P.J., and Senior Appellate Judge G. ALAN BLACKBURN concur.
NOTES
[1] Compare Burke v. State, 297 Ga.App. 38, 40-42, 676 S.E.2d 766 (2009) (reversing aggravated stalking conviction since the state failed to allege or argue to the jury that defendant's prior conduct and violations of a permanent protective order could be relied upon to establish a course of conduct or a pattern of harassing behavior) cert. aff'd, 287 Ga. 377, 695 S.E.2d 649 (2010).
[2] "A motion for mistrial which is not made at the time the questions objected to are answered is not timely and will be considered as waived because of the delay in making it." (Citation and punctuation omitted.) Hood v. State, 302 Ga. App. 99, 100, n. 5, 690 S.E.2d 250 (2010). See also Garner v. State, 180 Ga.App. 146, 147(1), 348 S.E.2d 690 (1986).