296 Ga. 534
FINAL COPY

S14A1471.   THE STATE v. CUSACK.

HINES, Presiding Justice.

The State appeals from the grant of a writ of habeas corpus to Patrick Cusack.  For the reasons that follow, we reverse.

On September 19, 2006, Patrick Cusack ("Cusack") pled guilty to one count of aggravated stalking and seven counts of criminal damage to property in the second degree.  On March 31, 2010, Cusack filed a petition for habeas corpus relief, asserting that the aggravated stalking plea was not freely and voluntarily made, as: (1) the court failed to apprise him of required constitutional rights; (2) trial counsel and the court failed to have his competency evaluated prior to the plea; and (3) trial counsel failed to pursue dismissal of his case by all means available.  The habeas court denied the petition, and this Court denied Cusack's application for a certificate of probable cause to appeal that decision.

Cusack filed a second habeas petition on April 12, 2013, citing *State v. Burke*, 287 Ga. 377, 379 (695 SE2d 649) (2010), for the proposition that "a

single violation of a protective order, alone, simply does not establish 'a pattern of harassing and intimidating behavior[,]' [Cit.]," id., and claiming that his aggravated stalking conviction was based solely on a single violation of a protective order, and therefore is void. The habeas court granted Cusack relief, finding that the aggravated stalking charge was, in fact, based solely on a single act of sending a letter contrary to a court order, and that the misdemeanors of criminal damage to property in the second degree were treated as crimes separate from the aggravated stalking charge.

Thus, habeas relief was granted on consideration of Cusack's second habeas petition. Ordinarily, habeas relief is not available on the filing of a second habeas petition. Rather, under OCGA § 9-14-51,

> [a]ll grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

And here, the habeas court found that the ground for relief asserted in Cusack's second habeas petition could not have been raised in his first petition,

2

specifically agreeing with Cusack's contention "that the present [i.e. second] Petition is the first available opportunity [Cusack] had to attack his conviction" after *Burke*, noting that *Burke* was decided three months after Cusack filed his first petition for a writ of habeas corpus. But, in doing so, the habeas court erred.

> When considering a successive petition under OCGA § 9-14-51,
>
> the habeas court must determine, as the threshold matter, whether the petitioner is entitled to a hearing on the merits of his belated claims. [Cit.] In order to be so entitled, the petitioner must raise grounds which are either constitutionally nonwaivable or which could not reasonably have been raised in the earlier petition. [Cits.]

*Tucker v. Kemp*, 256 Ga. 571, 573 (351 SE2d 196) (1987). A claim that could not reasonably be raised in an earlier petition would likely include a circumstance in which a change in the law after the first petition "'might render a later challenge successful. [Cit.]'" Id.

The habeas court treated this Court's decision in *Burke* as though the opinion created a substantive change in the criminal law, in that it "alter[ed] the range of conduct or the class of persons that the law punishes." *Schriro v. Summerlin*, 542 U. S. 348, 353 II (A) (124 SCt 2519, 159 LE2d 442) (2004) (Citation omitted.) See also *Chatman v. Brown*, 291 Ga. 785, 788 (2) (733

3

SE2d 712) (2012). However, the habeas court was incorrect. In fact, not only after, but also *before* this Court's opinion in *Burke* issued, Cusack could not have been convicted of aggravated stalking based solely upon a single violation of a protective order; the authority on that point was clear. And, it is not the mere fact that *Burke* issued that underlies Cusack's second habeas petition, but the principle that a conviction for aggravated stalking cannot be based solely upon a single violation of a protective order.

As the habeas court recognized, in *Burke*, the defendant was convicted of aggravated stalking based solely upon a single violation of a protective order. In rendering our decision in *Burke*, this Court looked to the relevant statutory language and noted that, under OCGA § 16-5-91 (a),[1] aggravated stalking is committed by doing certain acts in violation of a protective order "for the purpose of harassing and intimidating" the victim, and that, for the purpose of

---

[1] OCGA § 16-5-91 (a) reads:

A person commits the offense of aggravated stalking when such person, in violation of a bond to keep the peace posted pursuant to Code Section 17-6-110, temporary restraining order, temporary protective order, permanent restraining order, permanent protective order, preliminary injunction, good behavior bond, or permanent injunction or condition of pretrial release, condition of probation, or condition of parole in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

4

OCGA § 16-5-91 (a), the phrase "harassing and intimidating" was defined in

OCGA § 16-5-90 (a) (1),[2] as

> a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety . . . by establishing a *pattern* of harassing and intimidating behavior, and which serves no legitimate purpose. (Emphasis supplied.) [Cit.]

Id. at 378. Accordingly, *Burke* held that a single violation of a protective order,

by itself, does not constitute aggravated stalking, and noted that this holding was

"[b]ased on the plain terms of the stalking statutes . . . ." Id. In doing so, *Burke*

did not overrule any prior interpretation of the aggravated stalking statute, or

---

[2] OCGA § 16-15-90 (a) (1) reads:

A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. For the purpose of this article, the terms "computer" and "computer network" shall have the same meanings as set out in Code Section 16-9-92; the term "contact" shall mean any communication including without being limited to communication in person, by telephone, by mail, by broadcast, by computer, by computer network, or by any other electronic device; and the place or places that contact by telephone, mail, broadcast, computer, computer network, or any other electronic device is deemed to occur shall be the place or places where such communication is received. For the purpose of this article, the term "place or places" shall include any public or private property occupied by the victim other than the residence of the defendant. For the purposes of this article, the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made.

5

change anything in its application. Rather, *Burke* simply addressed a certain fact pattern, and the State's argument that under that fact pattern, the defendant could be found guilty of aggravated stalking. But, the State's argument was simply wrong, and the fact that this Court in *Burke* rejected a meritless argument that went against the language of the statute does not mean that *Burke* constituted a change in substantive criminal law. On the contrary, *Burke* simply reiterated the existing law, as stated in the statute. Indeed, before Cusack pled guilty in 2006, this Court noted that to establish the crime of aggravated stalking, the State must "prove a 'knowing and willful course of conduct.' [And,] [a] 'course of conduct' refers to a series of successive actions, and, as such, is equivalent to a 'pattern of behavior.'" *Daker v. Williams*, 279 Ga. 782, 785 (621 SE2d 449) (2005). Such was the state of the law on aggravated stalking before Cusack pled guilty to that crime, and before this Court's opinion in *Burke*.[3]

Although Cusack cites *State v. Carlisle*, 280 Ga. 770 (631 SE2d 347) (2006), for the proposition that, prior to the filing of his first habeas petition,

---

[3] This Court's opinion in *Burke*, supra, was issued after a grant of certiorari in *Burke v. State,* 297 Ga. App. 38 (676 SE2d 766) (2009). In that opinion, issued a year before Cusack filed his first habeas petition, the Court of Appeals specifically stated that the State's argument that it could gain a conviction for aggravated stalking by proving only a single violation of a court order "is not a correct statement of the law."

6

precedent of this Court showed that a conviction for aggravated stalking could be had based upon a single violation of an order specified in OCGA § 16-5-91 (a), that is not so. *Carlisle* dealt with a defendant who had been convicted of aggravated stalking as a party to the crime with her co-defendant Gibbs; it was Gibbs who was subject to a condition of a pretrial release, and the *Carlisle* opinion addressed what knowledge defendant Carlisle must have had regarding Gibbs's pretrial release condition in order for her to be guilty of aggravated stalking. Id. No question was before this Court regarding whether a conviction for aggravated stalking could be based on nothing more than a single violation of an order specified in OCGA § 16-5-91 (a), nothing in *Carlisle* can be read to have ruled on such an issue, and *Carlisle* cannot be considered to have established precedent on that point. See *State v. Walker*, 295 Ga. 888, 893 (764 SE2d 804) (2014). Further, *Carlisle* came to this Court on a grant of a writ of certiorari to the Court of Appeals, and that Court's opinion makes clear that, in fact, defendant Carlisle had been indicted not only as a party to Gibbs's crimes, but also for her own acts taken in furtherance of a pattern of harassing and intimidating the victim. See *Carlisle v. State*, 273 Ga. App. 567 (615 SE2d 543) (2005). And, of course, one act of violating a protective order, when done as

part of a pattern of harassing and intimidating behavior, see OCGA § 16-5-90 (a) (1), can constitute the crime of aggravated stalking. *Louisyr v. State*, 307 Ga. App. 724, 725-730 (1) (706 SE2d 114) (2011). Accordingly, under the precedents existing at the time of Cusack's first habeas petition, a claim that Cusack could not be convicted of aggravated stalking based solely on a single violation of a protective order could have been raised. Consequently, under OCGA § 9-14-51, habeas relief could not be granted on Cusack's second habeas petition. *Tucker*, supra at 574.[4]

Judgment reversed. All the Justices concur.

---

[4] Further, even if this Court's opinion in *Burke* had represented a substantive change in the criminal law that could not have been raised until that opinion issued, it appears Cusack's second habeas petition would nonetheless have been subject to dismissal. Under OCGA § 9-14-51, grounds not raised in the earlier habeas petition are waived "unless . . . [the] judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not *reasonably have been raised in the original or amended petition*." (Emphasis supplied.) And, although Cusack could not have argued that *Burke* affected the validity of his conviction in his original first petition, he certainly could have amended the petition to timely include such an argument. This Court has stated that a habeas petitioner has an "unfettered right to amend" his petition at any time before the hearing on the issues presented therein. *Nelson v. Zant*, 261 Ga. 358, 359 (2) (405 SE2d 250) (1991). See also *Jarrell v. Zant*, 248 Ga. 492, n. 1 (284 SE2d 17) (1981). Cusack filed his first habeas petition on March 31, 2010; *Burke* was decided on June 28, 2010, and the habeas court held a hearing on April 28, 2011. Thus, ten months passed between the issuance of the supposedly substantive change in the law, and the hearing on Cusack's first habeas petition. Although Cusack did not file an amendment to his petition, given such a time frame, it would have been reasonable to do so had the substantive criminal law actually changed, and OCGA § 9-14-51would thus operate so as to treat that ground as waived.

8

Decided February 16, 2015.

Habeas corpus. Fulton Superior Court. Before Judge Tusan.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, David K. Getachew-Smith, Assistant District Attorneys, for appellant.

Yurachek & Associates. Mark A. Yurachek, for appellee.