A96A2308. KINNEY v. THE STATE.
(477 SE2d 843)

ELDRIDGE, Judge.

Bruce Michael Kinney was indicted in the Superior Court of Clayton County for the offenses of aggravated assault under Count 1, aggravated battery under Count 2, and aggravated stalking under Counts 3, 4, 5, and 6 of Indictment No. 96CR-541-4. Count 6 of the indictment was quashed pursuant to appellant's demurrer thereon. Appellant appeals the trial court's denial of his motion in autrefois convict and plea in bar of former jeopardy with regard to Counts 4 and 5 of the indictment.

At the outset, in order to thoroughly evaluate the issues raised in the instant appeal and the factual basis therefor, we take judicial notice of the record and transcript pertaining to appellant in the case of *Kinney v. State*, 218 Ga. App. XXXII (1995), an unpublished opinion. See *Petkas v. Grizzard*, 252 Ga. 104, 108 (312 SE2d 107) (1984); *Rogers v. State*, 195 Ga. App. 446, 447 (394 SE2d 116) (1990).

The facts which give rise to this appeal are these: appellant was charged with a violation of the Family Violence Act, OCGA § 19-13-1 et seq., pursuant to OCGA § 19-13-6 (b) which states that "[a]ny person who violates the provisions of a domestic violence order which excludes, evicts, or excludes and evicts that person from a residence or household shall be guilty of a misdemeanor." To that end, an accusation was drawn in the State Court of Clayton County on September 23, 1994, alleging that the appellant "did violate a temporary protective order issued by a superior court judge."

A bench trial was held in state court on November 28, 1994, wherein the victim, appellant's wife Patti Kinney, testified at length regarding the appellant's numerous violations of the temporary protective order (TPO) 94-PO-00031-6, which excluded appellant from her residence and was issued by Judge Deborah C. Benefield on Feb-

ruary 18, 1994, and modified on February 23, 1994. Patti Kinney's trial testimony included instances of repeated harassing telephone calls made from April 1994 to August 1994; Ms. Kinney had written down all calls made from March 18, 1994, onward and had tapes of some telephone calls which were not tendered during trial. In addition, Ms. Kinney testified about repeated instances occurring between February and August 1994, in which appellant followed her and would appear at her home and church, as well as at her son's baseball games, in violation of the TPO; Patti Kinney had documented these instances, too, by writing them down as they occurred.

After the trial court heard evidence from all parties, appellant was found guilty of the violation of TPO 94-PO-00031-6 pursuant to OCGA § 19-13-6 (b); the trial court specifically found that "Ms. Kinney is somewhat equivocal about many of the allegations. I say equivocal, indefinite let's say, about many of the allegations. There are statements that certain calls are made and there are tapes of them. Again, it would have been nice to have heard the tape and there wouldn't be any question about what we're talking about here. The one event, though, that I find of particular note is . . . that he followed [her] approximately three miles on Jodeco Road not away from Ms. Kinney's house but towards Ms. Kinney's house after she had remained secluded until she got [word] from the sheriff's department that he had been served with the temporary protective order. I find that this allegation and this allegation alone has been proven to me beyond a reasonable doubt . . . [a]nd for that the Court finds the defendant guilty." The trial court sentenced appellant to 12 months probation, 80 hours of community service, a $500 fine, and directed appellant to abide by all terms and conditions of any order governing the conduct of the parties.[1]

Less than two months later, January 26, 1995, appellant allegedly appeared at Patti Kinney's place of employment, a Scottish Rite children's clinic on Riverdale Road in Clayton County, and shot her in the head. Ms. Kinney lived, but she lost the use of her left arm. From these acts, the indictment in the case sub judice arose.

Counts 1, 2, and 3 of the instant indictment relate to appellant's alleged shooting of the victim: aggravated assault, aggravated battery, and aggravated stalking in violation of court order 94-DR-00389-6. Counts 4 and 5 of the indictment charge the appellant with two counts of aggravated stalking for specific violations of TPO 94-PO-00031-6: Count 4 wherein the appellant allegedly made harassing telephone calls to Patti Kinney between the dates of May 1994

---

[1] This Court affirmed appellant's conviction in an unpublished opinion, *Kinney v. State*, supra.

and June 12, 1994; and Count 5 wherein the appellant allegedly contacted Ms. Kinney while she was watching her son's baseball game at a local park.

Appellant filed a motion in autrefois convict and plea in bar of former jeopardy with regard to Counts 4 and 5 of the instant indictment. An evidentiary hearing was held during which the appellant introduced only selected pages of the transcript of the prior prosecution; thereafter, the trial court denied appellant's motion. This appeal followed. Held:

1. Appellant argues that prosecution on Counts 4 and 5 of the indictment in the case sub judice is barred since appellant was tried on the same set of facts under the prior accusation in Clayton County State Court. The State concurs that the acts contained in Counts 4 and 5 are the same as were proved in the prior trial, but contends to this Court, as it did to the trial court, that "it is not at all clear why this evidence was admitted. Perhaps it was admitted as similar transaction evidence or was considered relevant in some other way"; the State maintains that the conduct alleged under Counts 4 and 5 of the indictment is not the same conduct for which appellant was convicted in the prior state court prosecution.

We find this argument patently disingenuous. Even a cursory review of the transcript of the prior trial, an entire copy of which was not provided to the trial court in the instant case, demonstrates that, contrary to the State's assertions before this court and the trial court, evidence of the harassing telephone calls, as well as appellant's contact with the victim at the baseball game, was offered to prove repeated violations of TPO 94-PO-00031-6 pursuant to OCGA § 19-13-6 (b). Any one of these acts, the State argued at the time, would "meet the state's burden of proof," and would thus constitute grounds for conviction under the statute. That the conviction was based upon the appellant's act of following his wife on Jodeco Road, and not the acts contained in Counts 4 and 5 of the instant indictment, does not alter the fact that the State tried to convict the appellant upon the acts asserted in Counts 4 and 5 and introduced them against appellant in the prior trial specifically for that purpose. See *McCannon v. State*, 252 Ga. 515, 518 (315 SE2d 413) (1984). Such is jeopardy in the classic sense in that further prosecution on the conduct charged in Counts 4 and 5 of the indictment would violate both substantive and procedural principles of double jeopardy; appellant was prosecuted for a general violation of TPO 94-PO-00031-6 under the same set of facts that the State now attempts to use as a basis for conviction on aggravated stalking in violation of TPO 94-PO-00031-6. See OCGA § 16-1-7 (a) (2); *State v. Estevez*, 232 Ga. 316 (206 SE2d 475)

(1974). A prosecution thereon cannot be sustained. OCGA § 16-1-7 (b).[2]

We reverse the trial court's denial of appellant's motion in autrefois convict and plea in bar, and we find that prosecution on Counts 4 and 5 as alleged in the indictment in the case sub judice is barred.

2. In addition to the above, appellant also alleges that the trial court erred in denying his demurrer to Count 3 of the indictment. While not styled as a constitutional challenge, appellant claims that Count 3, by simply tracking the "contact" language of the aggravated stalking statute, OCGA § 16-5-91, is too "vague" to put appellant on sufficient notice of the offense against which he is to defend. We do not agree.

"[N]o man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." (Citations and punctuation omitted.) *Ridley v. State*, 232 Ga. 646, 648 (208 SE2d 466) (1974). Under Count 3 of the indictment in the case sub judice, the term, "to contact," is readily understood by people of ordinary intelligence as meaning to get in touch with; to communicate with. *Johnson v. State*, 264 Ga. 590, 591 (449 SE2d 94) (1994). The statute at issue here "prohibit[s] the defendant from contacting another person *intending* to harass and intimidate and the defendant certainly knows if he is doing that." (Citations and punctuation omitted; emphasis in original.) Id. at 591. Further, Count 3 specifies the date and place in which the contact occurred and specifically references court order 94-DR-00389-6 as the order allegedly violated by the appellant's prohibited contact with the victim. Thus, Count 3 of the indictment "was stated in the language of the statute and we believe fairly apprised the defendant of the contemplated conduct forbidden by the statute with which he was charged in this case." *Ridley*, supra at 647-648; *Burnett v. State*, 202 Ga. App. 563, 565 (415 SE2d 43) (1992). The trial court did not err in denying appellant's demurrer to Count 3 of the indictment.

3. Appellant contends that the trial court erred in denying his motion to obtain the Georgia criminal history through the Georgia Crime Information Center (GCIC) of prospective jurors in the case sub judice. Appellant alleges that the Clayton County District Attor-

---

[2] The State's additional argument regarding the legal impossibility of basing the prior conviction for violation of OCGA § 19-13-6 (b) upon acts such as those contained in Counts 4 and 5 of the instant indictment disregards the law of the case as established by the decision of this Court in *Kinney v. State*, supra. See *Roulain v. Martin*, 266 Ga. 353, 354 (466 SE2d 837) (1996). This legal impossibility argument was not raised by either party in the prior trial or on the appeal thereof, and this Court affirmed appellant's prior conviction, thereby establishing the law of this case, based upon the record and enumerations of error before this Court. See generally *Johnson v. Heifler*, 141 Ga. App. 460, 463 (233 SE2d 853) (1977).

ney's Office runs a GCIC on all prospective jurors and uses the information during jury selection; appellant argues that since the prosecutor has this GCIC information, appellant is entitled to this information pursuant to the new discovery act, OCGA § 17-16-1 et seq., in order to "level the playing field."

In the alternative, appellant argues that if he is not entitled to this information, the prosecutor should not be either, as the district attorney, in obtaining GCIC information on prospective jurors, violates a juror's right to privacy and subverts the purposes for which the GCIC was created and maintained pursuant to OCGA § 35-3-33.[3]

The routines of the district attorney's office may be common knowledge among the parties involved in the case sub judice. However, other than a statement regarding his own perception of the practices of that office, appellant failed to introduce any evidence whatsoever in support of his contention that the Clayton County District Attorney runs a GCIC of prospective jurors and utilizes that information in the jury selection process; moreover, there is absolutely nothing in the record before this Court that would provide a factual basis for this contention. Accordingly, appellant's factual assertions, unsupported by evidence of record, cannot be considered on appeal. *Dotson v. State*, 213 Ga. App. 7, 9 (443 SE2d 650) (1994); *Behar v. Aero Med Intl.*, 185 Ga. App. 845 (366 SE2d 223) (1988).

*Judgment affirmed in part and reversed in part. Andrews and Smith, JJ., concur.*

DECIDED OCTOBER 17, 1996 —
RECONSIDERATION DENIED OCTOBER 31, 1996 —

*Richard D. Hobbs, Pandora E. Terry*, for appellant.
*Robert E. Keller, District Attorney, Brian J. Amero, Assistant District Attorney*, for appellee.

---

[3] In any future proceedings wherein these arguments are raised, the initial inquiry should concern appellant's standing in this criminal case to raise matters pertaining to: (1) an individual juror's constitutional right to privacy, and (2) the district attorney's adherence to the requirements of the Georgia Bureau of Investigation's policies and procedures pursuant to OCGA § 35-3-33. See generally *Keenan v. State*, 263 Ga. 569, 570 (436 SE2d 475) (1993); *City of Chamblee v. Village of North Atlanta*, 217 Ga. 517 (123 SE2d 663) (1962).