## A08A1855. BURKE v. THE STATE.
### (676 SE2d 766)

ADAMS, Judge.

Sean M. Burke appeals following his conviction and sentence on one count of aggravated stalking for which he was sentenced to a term of ten years, five years to serve.[1] For the reasons set forth below, we reverse.

The indictment in this case charged Burke with aggravated stalking and alleged that on or about November 23, 2005, he "did unlawfully contact Elaine Bolton, without [her] consent . . . , for the purpose of harassing and intimidating [her], in violation of a court order, which prohibited such behavior" by Burke. At the trial in this case, Elaine Bolton recounted the events leading up to the entry of the court order against Burke.

The two originally began dating in August 2002, but by New Year's Eve, Bolton had observed sufficient "red flags" in Burke's personality to deter her from continuing the relationship. When she told Burke that things were not working out, he reacted with anger. Bolton felt bad about hurting him, however, and they agreed to be friends.

Over the next few months, Bolton and Burke did things together as friends. But she sometimes felt a kind of hostility from Burke and was fearful about what would happen, so she tried "to back out slowly as I could." In July 2003, Bolton reluctantly agreed to go boating with Burton on Lake Lanier after "he kept on and on" about

---

[1] As an initial matter, we note that the State filed its appellate brief in this case more than three months late, after first receiving a 21-day extension of time. Burke moved that we not consider the brief as a result. While we reluctantly deny that motion due to the gravity of issues at stake here, requiring careful consideration of all aspects of the case, we take this opportunity to once again caution the representatives of the State that the State is required to file a timely brief in all criminal appeals in which it is an appellee under Court of Appeals Rules 13 and 23 (b). The failure to do so may result in the brief's nonconsideration and a finding of contempt on the part of State's counsel.

it. The situation deteriorated when Burke steered the boat into an isolated cove and indicated that he wanted to have sex. When Bolton declined, he became very angry, tearing out of the cove and back to the dock at a high speed, which resulted in Bolton and her dog being thrown to the floor of the boat. After Burke loaded his boat on the trailer, he drove off leaving Bolton and her dog, saying that she could find her own way back to Atlanta. He returned after around 30 minutes, and she got in the car. As Burke sped back to Atlanta, Bolton tried not to speak because he was still very angry and she did not want to provoke him. When she did comment on his speed, he pulled off the interstate and instructed her to get out of the car. He eventually changed his mind and drove Bolton and her dog home. Bolton resolved never to see Burke again.

Burke, however, continued to initiate contact. Bolton said that she refused to answer his persistent calls, so he left angry messages. But Bolton conceded on cross-examination that her phone records reflect a number of calls during this time period from her phone numbers to Burke's phone, although she did not remember those calls. A week after the boating incident, Burke came into Bolton's house unannounced, threatening first to sprinkle dirt on her bed and then threatening to kill himself with one of her kitchen knives. She persuaded him to leave, but he destroyed some of her property as he left. He also began following her wherever she went. He confronted her on these occasions, but she told him she did not want to talk to him. While Burke never threatened Bolton or harmed her, she was "very fearful" because he was there "every waking moment" and would not leave her alone. She just wanted it to stop.

On another occasion, Burke knocked on the door of Bolton's back deck and threatened to take some pills. He stayed for two hours, then left. He returned one-half hour later and "heaved" his dog over onto Bolton's deck. At that point, she called the police, and an officer came to the house. Bolton later returned the dog to Burke rather than take it to a shelter, but Burke was back at her house within a few hours and put the dog on her front porch. The same officer responded to Bolton's call in response to this, and he wrote a report.

Shortly thereafter on August 26, 2003, Bolton obtained a temporary protective order ("TPO") against Burke, which was served on him on September 2. The next Sunday Burke came to Bolton's church and sat beside her. When he continued to follow her, she showed the TPO to the church's security guard who told Burke that he should not be around Bolton. Burke ran to his car and sped away, yelling, "I'll see you in court." Bolton reported the incident and after an evidentiary hearing, the trial court entered a 12-month protective order, which prohibited Burke from having any contact with Bolton in any form.

Despite the 12-month order, Burke continued to send Bolton numerous letters and correspondence, some of which Bolton interpreted to be hostile. Bolton decided the protective order was not working and applied for an arrest warrant. Burke was taken into custody, but continued to attempt contact, initiating collect calls and sending her letters from jail. Burke was charged with one count of stalking and two counts of aggravated stalking, and the matter proceeded to trial. While the jury deliberated, Burke changed his plea to guilty. On September 2, 2004, he was sentenced to ten years, to serve thirty months. The trial judge also indicated that it would issue a permanent protective order containing an expansive no contact provision. The trial judge specifically told Burke at sentencing that the order would prevent "any contact whatsoever of any nature, no telephones, no mail, no dogs, no messages." The judge signed the permanent protective order on October 24, 2004.

Nevertheless, in late November 2005, Bolton received correspondence in the mail that she believed came from Burke. This correspondence, which consisted of a card, a letter and a handwritten poem in one envelope, is the subject of the current charge against Burke. The envelope was addressed to Bolton at her place of employment and listed her home as the return address. She recognized Burke's handwriting on these documents, and knew she did not mail the envelope herself. Bolton said that she was "devastated" to receive it. Although Burke stated in the letter that he did not mean to intimidate or harass her, she was shocked that he was once again violating a protective order. She feared that he would continue "harassing and intimidating me through communication which the judge told him specifically not to do in court."

The State called a forensics documents examiner from the Georgia Bureau of Investigation, who testified that the handwriting on the November 2005 correspondence matched known samples of Burke's handwriting. She concluded that Burke had written the correspondence. And a corrections officer from the prison in which Burke was incarcerated testified that the prison does not routinely open and check prisoners' outgoing mail, although it stamps the mail to show that it was sent from a prison facility. The corrections officer stated that it would have been possible for Burke to have placed the correspondence to Bolton in an outer envelope, and send it to someone else to mail for him.

The State also presented as similar transaction evidence testimony from one of Burke's former girlfriends, who testified as to Burke's behavior after she attempted to break off their relationship, which led her to seek and obtain a protective order and to file a civil suit against him.

Burke contends that the trial court erred in denying his motion for a directed verdict at the close of the State's evidence. He asserts that the State failed to establish the elements of aggravated stalking in that it failed to show: (1) that he even mailed the letter to Bolton; (2) that a single letter was sufficient to establish the course of conduct necessary to prove a claim of aggravated stalking; (3) that Bolton was placed in reasonable fear for her physical safety as required to establish stalking; or (4) that the letter was not sent for a legitimate purpose because it was intended as a note of apology.

In order to establish the offense of aggravated stalking in this case, the State was required to prove (1) that Burke violated a protective order; (2) that prohibited contact with Bolton; (3) without Bolton's consent; and (4) for the purpose of harassing and intimidating her. See OCGA § 16-5-91 (a); *Jagat v. State*, 240 Ga. App. 822, 823 (1) (525 SE2d 388) (1999). We find the evidence sufficient to support a jury finding beyond a reasonable doubt that the State established the first three of these elements.

Bolton and the handwriting expert both testified that the letter, poem and card were written by Burke, and the State presented evidence establishing that Burke could have sent the letter from prison for someone else to mail. Bolton clearly wished to have no further contact with Burke and was shocked to receive the correspondence. The order expressly prohibited Burke from any contact whatsoever with Bolton; therefore, the letter was sent in violation of the protective order.

But the State was also required to prove the fourth element of the offense. As this Court has previously explained, aggravated stalking occurs when a defendant commits acts defined as stalking in violation of a protective order. *Bradley v. State*, 252 Ga. App. 293 (556 SE2d 201) (2001). Accordingly, merely violating the order does not establish the offense;[2] the State must also prove that Burke acted for the purpose of harassing and intimidating Bolton. The Georgia Code defines "harassing and intimidating" in this context as involving four factors of its own:

> [1] a knowing and willful course of conduct directed at [Bolton] [2] which causes emotional distress by placing [Bolton] in reasonable fear for [her] safety . . . [3] by establishing a pattern of harassing and intimidating behavior, and [4] which serves no legitimate purpose.

---

[2] We note, however, that Burke may have been subject to punishment for criminal contempt under OCGA § 15-6-8 (5) for violating the protective order, without proof of an additional element. *Norred v. Moore*, 263 Ga. App. 516, 519 (3) (588 SE2d 301) (2003).

OCGA § 16-5-90 (a) (1). The State is not required to show, however, that Burke made any "overt threat of death or bodily injury" to Bolton. Id.

The Supreme Court of Georgia has determined that "a knowing and willful course of conduct" and "pattern of behavior" are equivalent to one another as they both involve "a series of successive actions." *Daker v. Williams*, 279 Ga. 782, 785 (621 SE2d 449) (2005). Burke asserts that the State failed to prove the requisite pattern or course of conduct because it based the charge against him on one contact with Bolton, the November 2005 correspondence. At trial, the State specifically argued to the jury that it did not have to prove more than one contact; it only had to prove a violation of a court order. While Burke did not object, this is not a correct statement of the law. The State must also prove a pattern or a course of conduct as part of establishing the harassing and intimidating element of aggravated stalking. The State now argues on appeal that it is entitled to rely on Burke's actions leading up to his 2004 conviction to establish a course of conduct, but it included no such allegation in the indictment and made no such argument to the jury. Moreover, Burke counters that because a 15-month period separates those actions from his November 2005 correspondence, the latter cannot constitute part of a pattern and further argues that reliance upon his earlier actions to support a new stalking charge would be a violation of double jeopardy. See *Kinney v. State*, 223 Ga. App. 418, 420 (1) (477 SE2d 843) (1996). Pretermitting whether the State could have established a pattern or course of conduct in reliance upon Burke's pre-conviction behavior, the fact remains that it made no attempt to do so in prosecuting him. Thus, the State failed to establish the course of conduct or pattern of behavior required by the Code.[3] Accordingly, we must reverse Burke's conviction for aggravated stalking.

*Judgment reversed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 26, 2009 ■

*William G. Quinn III*, for appellant.

---

[3] Among his remaining enumerations of error, Burke asserts that the correspondence was sent for a legitimate purpose because it was intended as an apology. Burke attempted to present his brother as a witness at trial, but the trial court excluded the testimony as a sanction for discovery violations. Burke argues in support of his proffer on appeal that his brother's testimony would support the argument that letters of apology were part of Burke's treatment for alcoholism. While the State concedes that the trial court erred in excluding such testimony, it asserts that the error was harmless. Given our holding above, however, we need not reach this or Burke's other enumerations of error.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.