## A11A1240. HERBERT v. THE STATE.
### (715 SE2d 795)

BLACKWELL, Judge.

Vincent Herbert was tried by a Whitfield County jury and convicted of aggravated stalking.[1] He appeals, asserting that the evidence adduced at trial is insufficient to prove beyond a reasonable doubt that he committed aggravated stalking because, he says, it does not show that he engaged in a pattern of harassing and intimidating behavior. We find no merit in this claim of error and affirm.

---

[5] OCGA § 24-4-6.

[1] See OCGA § 16-5-91 (a).

When we consider whether the evidence is sufficient to sustain a conviction, we ask whether any rational jury could find proof of guilt beyond a reasonable doubt in the evidence adduced at trial, viewing that evidence in the light most favorable to the verdict. See *Cooper v. State*, 299 Ga. App. 199, 200 (682 SE2d 154) (2009). And we bear in mind that it is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from it. *Ferguson v. State*, 307 Ga. App. 232, 233 (1) (704 SE2d 470) (2010). "So, if the record contains some competent evidence to prove each element of the crime of which the defendant was convicted, even though that evidence may be contradicted, we must uphold the conviction." Id. (citation omitted).

Viewed in the light most favorable to the verdict, the record shows that Herbert and the victim met in 2005 and married in 2007. Soon after they met, Herbert began to abuse the victim. In 2005, for instance, Herbert learned that the victim had changed her profile on a social networking website, and he confronted her about it, demanding her password for the website. In the course of this confrontation, Herbert approached the victim with a large knife, held it to her throat, and said that he would kill her if she did not stop crying. Between 2005 and 2007, Herbert and the victim had a number of other violent confrontations, which involved Herbert becoming enraged, forcing the victim from their house, breaking her belongings, and striking her. Once, in 2007, Herbert drove his car at the victim as she ran from him, and when he failed to strike her with his car, he exited the car and beat her with his fists. And one day in 2008, Herbert forced the six-year-old son of the victim from their house and threw out his clothing. Herbert then told the victim that he would kill both her and her son if the son did not listen to him. Herbert also threatened to "stomp" the unborn child that the victim was carrying, pulled on her fingers until she experienced pain, poured ice water over her head, broke her cell phone, and ripped the phone lines from the wall.

Finally, on April 15, 2009, Herbert was arrested and charged with family violence battery and cruelty to children in the third degree, following another incident in which he struck the face of the victim with a closed fist. Herbert was permitted to bond out of jail the next day, subject to the condition that he stay away from the victim and her children. But five days later, Herbert approached the victim and their infant daughter in a Wal-Mart, walking up behind them and whispering the name of the victim until she turned around. The victim told Herbert that she did not want any trouble and asked him to leave her alone. After angrily making various accusations about the victim, Herbert tried to take their baby out of her stroller. The victim told Herbert that he could not remove the

baby from the stroller, causing him to become angrier. The victim then started backing away from Herbert, who threatened to "knock [her] block off." Herbert pursued the victim, swinging at her with his fists. Herbert also warned the victim to leave Dalton and that, if he saw her again, he would kill her.

Based on the incident at the Wal-Mart, Herbert was charged with aggravated stalking. The jury found Herbert guilty of this charge, and the trial court sentenced him to two years imprisonment, followed by three years of probation. On appeal, Herbert challenges the sufficiency of the evidence adduced at his trial.

Under Georgia law, a person commits aggravated stalking when, in violation of a protective order, he "follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." OCGA § 16-5-91 (a). So, in the circumstances of this case, the State was required to prove that a protective order prohibited Herbert from having contact with the victim, that Herbert violated the protective order by contacting her without her consent, and that he contacted her for the purpose of harassing and intimidating her. See *Louisyr v. State*, 307 Ga. App. 724, 728 (1) (706 SE2d 114) (2011). To prove an act was done for the purpose of harassing and intimidating, the State must show that it was part of a "pattern of harassing and intimidating behavior."[2] *State v. Burke*, 287 Ga. 377, 379 (695 SE2d 649) (2010).

Herbert does not dispute that a protective order existed or that he violated it by contacting the victim, but relying on *Burke*, he argues that the State failed to prove that his contact with her was part of a pattern of harassing and intimidating behavior. He says that any violent confrontations with the victim prior to the issuance of the protective order are only "prior difficulties" and that evidence of these confrontations, therefore, cannot establish a pattern of harassing and intimidating behavior. We do not agree.

Although the Supreme Court said in *Burke* that "a single violation of a protective order, *by itself*, does not amount to aggravated stalking,"[3] 287 Ga. at 378-379 (emphasis supplied), we later

---

[2] This requirement is taken from OCGA § 16-5-90 (a) (1), which provides in relevant part: . . . For the purposes of this article, the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose. . . .

[3] We note that *Burke* presented unique circumstances that are absent in this case. In *Burke*, the State attempted to prove aggravated stalking at trial by establishing only that the defendant violated a protective order, "a strategy that eliminated any basis for establishing a 'pattern' of harassing and intimidating behavior." 287 Ga. at 379. In fact, the State incorrectly

held in *Louisyr* that OCGA § 16-5-91 prohibits even a single violation of a protective order *if* that violation is part of a pattern of harassing and intimidating behavior. 307 Ga. App. at 729 (1). We explained in *Louisyr* that, to determine whether the evidence shows a pattern of harassing and intimidating behavior,

> the jury can consider a number of factors, including the prior history between the parties, the defendant's surreptitious conduct, as well as his overtly confrontational acts, and any attempts by the defendant to contact, communicate with, or control the victim indirectly, as through third parties.

Id. (Footnotes omitted.) Even more recently, in *Hervey v. State*, 308 Ga. App. 290 (707 SE2d 189) (2011), we held that the evidence was sufficient to prove a pattern of harassing and intimidating behavior where the evidence showed that the violation of a protective order was preceded by repeated threats to the victim. See 308 Ga. App. at 292. See also *Davidson v. State*, 295 Ga. App. 702 (673 SE2d 91) (2009) (evidence that defendant telephoned victim in violation of condition of probation, coupled with evidence of threats and conduct that predated the imposition of the condition of probation, was sufficient to prove a pattern of harassing and intimidating behavior and sustain an aggravated stalking conviction). Here, the jury was authorized to find Herbert guilty of aggravated stalking based on his violation of the protective order and his extensive history of harassing and intimidating the victim.[4]

For these reasons, we affirm the judgment of conviction.
*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED AUGUST 15, 2011.

---

stated the law to the jury, explicitly arguing "that it did not have to prove more than one contact; it only had to prove a violation of a court order." *Burke v. State*, 297 Ga. App. 38, 42 (676 SE2d 766) (2009).

[4] Even if the earlier violent confrontations did not show a pattern of harassing and intimidating behavior, evidence of what happened inside the Wal-Mart on April 21, 2009 would be enough to authorize a finding of such a pattern. "A 'course of conduct' refers to a series of successive actions, and, as such, is equivalent to a 'pattern of behavior.' " *Daker v. Williams*, 279 Ga. 782, 785 (621 SE2d 449) (2005). When Herbert contacted the victim in the Wal-Mart, Herbert approached the victim, whispered her name, made accusations about her, attempted to remove their baby from her stroller, attempted to strike the victim twice, threatened to "knock [her] block off," and ultimately threatened to kill her. This conduct amounts to a series of successive actions that would authorize the jury to find a pattern of harassing and intimidating behavior. See *Louisyr*, 307 Ga. App. at 729 (1).

400

*Kelley A. Dial*, for appellant.
*Kermit N. McManus, District Attorney*, for appellee.