**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**January 27, 2014**

# In the Court of Appeals of Georgia

A13A2243. OLIVER v. THE STATE.

DILLARD, Judge.

Following a bench trial, Angela Oliver was convicted of aggravated stalking. On appeal, Oliver contends that the evidence was insufficient to support her conviction and that the trial court erred in finding that she knowingly waived her right to a jury trial. For the reasons set forth *infra*, we affirm.

Construing the evidence to uphold the trial court's findings and judgment,[1] the record shows that Oliver has a long history of mental health and drug abuse problems. And because of these personal issues (in part), she lived with her mother, Ruby Goss, for a significant part of her adult life. But over the course of time, this living arrangement became precarious due to Oliver's increasingly volatile and violent

---

[1] *See Hammont v. State*, 309 Ga. App. 395, 396 (710 SE2d 598) (2011).

behavior toward her mother. Consequently, on July 24, 2009, Goss sought and obtained a family violence *ex parte* protective order, which ordered Oliver to stay away from Goss's residence, prohibited her from approaching within 100 yards of Goss, and also prohibited her from having any direct or indirect contact with Goss. And five days after the superior court issued this protective order, a sheriff's deputy served Oliver with the order and read to her its specific provisions.

Nevertheless, on August 3, 2009, Oliver telephoned Goss at her home, informed her that she was coming over, and told her to call an ambulance because she had overdosed on tranquilizers in an attempt to commit suicide. Goss urged Oliver not to come to her house and, immediately thereafter, called the sheriff's department. But before law enforcement could respond, Oliver arrived at Goss's home, having been driven there by an unknown male friend, and began knocking on the front door. Goss refused Oliver's requests to be allowed inside the residence, and only briefly opened the door to give her daughter a soft drink, after which she re-locked the door and waited for the sheriff's deputy to arrive. A few minutes later, an ambulance and a sheriff's deputy arrived on the scene and found Oliver at the front door of the home still yelling for Goss to let her inside. At that point, however, the deputy—who

2

coincidentally had served Oliver with the *ex parte* protective order—calmed Oliver down, and the ambulance then transported her to the hospital.

Oliver was later arrested and indicted on one count of aggravated stalking. Thereafter, and nearly two weeks before her scheduled trial, Oliver's counsel filed a waiver of jury trial, which both Oliver and her counsel signed. And at the start of her trial, the court inquired whether Oliver was waiving her right to a jury trial, to which Oliver's counsel replied in the affirmative in her presence. A bench trial then ensued, during which Goss, the arresting sheriff's deputy, and Oliver testified. And at the trial's conclusion, the court found Oliver guilty of aggravated stalking.

Subsequently, Oliver obtained new counsel and filed a motion for new trial. But after holding a hearing, during which Oliver's trial counsel testified, the trial court denied Oliver's motion. This appeal follows.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[2] And in evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the

---

[2] *See, e.g.*, *English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

charged offenses beyond a reasonable doubt."[3] Accordingly, the trier of fact's guilty verdict will be upheld "as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] With these guiding principles in mind, we turn now to Oliver's specific claims of error.

1. Oliver contends that the evidence was insufficient to support her conviction of aggravated stalking. Specifically, she argues that the State failed to prove that she engaged in a pattern of harassing and intimidating behavior toward Goss. We do not agree.

Under OCGA § 16-5-91 (a), "[a] person commits the offense of aggravated stalking when such person, in violation of a . . . temporary protective order, . . . follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."[5] And the term "harassing and intimidating" is defined

---

[3] *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *accord Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[4] *Nassau v. State*, 311 Ga. App. 438, 440-41 (715 SE2d 837) (2011) (punctuation omitted).

[5] OCGA § 16-5-91 (a).

4

in the simple stalking statute,[6] as "a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety . . . by establishing a *pattern* of harassing and intimidating behavior, and which serves no legitimate purpose."[7]

In light of the "plain terms of the stalking statutes, a single violation of a protective order, *by itself*, does not amount to aggravated stalking."[8] Rather, the "harassing and intimidating" conduct must be established by, *inter alia*, "a *pattern* of harassing and intimidating behavior."[9] And a single violation of a protective order, standing alone,[10] "simply does not establish 'a pattern of harassing and intimidating

---

[6] *See State v. Burke*, 287 Ga. 377, 378 (695 SE2d 649) (2010) (noting that "[t]he definition contained in the simple stalking statute is applicable here, because the legislature has made clear that the simple stalking statute defines 'harassing and intimidating' 'for purposes of the entire article on stalking in the Georgia Code.'" (punctuation omitted)); OCGA § 16-5-90 (a) (1).

[7] OCGA § 16-5-90 (a) (1) (emphasis supplied).

[8] *Burke*, 287 Ga. at 378 (emphasis supplied); *accord Herbert v. State*, 311 Ga. App. 396, 398 (715 SE2d 795) (2011); *Louisyr v. State*, 307 Ga. App. 724, 728 (1) (706 SE2d 114) (2011).

[9] *Burke*, 287 Ga. at 379 (punctuation omitted).

[10] Like *Herbert*, the case *sub judice* does not present the "unique circumstances" at issue in *Burke*. *Herbert*, 311 Ga. App. at 399. In *Burke*, the State sought to prove aggravated stalking by establishing only that the defendant violated a protective order, "a strategy that eliminated any basis for establishing a 'pattern' of

5

behavior.'"[11] That said, OCGA § 16-5-91 does prohibit "even a single violation of a protective order *if* that violation is part of a pattern of harassing and intimidating behavior."[12] Furthermore, in determining whether the evidence shows a pattern of harassing and intimidating behavior, the jury can consider any number of factors, including, but not limited to, "the prior history between the parties, the defendant's surreptitious conduct, as well as [her] overtly confrontational acts, and any attempts by the defendant to contact, communicate with, or control the victim indirectly, as through third parties."[13]

And here, as noted *supra*, Goss testified that in the time leading up to her obtaining the protective order, Oliver became increasingly volatile and violent toward her. Then, less than two weeks after Goss obtained the protective order, Oliver violated it with impunity. Given these circumstances, we find that the trial court was

_____

harassing and intimidating behavior." 287 Ga. at 379. Indeed, the State incorrectly stated the law to the jury in *Burke*, claiming "that it did not have to prove more than one contact; it only had to prove a violation of a court order." 297 Ga. App. 38, 42 (676 SE2d 766) (2009).

[11] *Burke*, 287 Ga. at 379 (punctuation omitted).

[12] *Herbert*, 311 Ga. App. at 399; *accord Louisyr*, 307 Ga. App. at 729 (1).

[13] *Herbert*, 311 Ga. App. at 399 (punctuation omitted).

6

authorized to find Oliver guilty of aggravated stalking.[14] And even if we assume *arguendo* that the earlier volatile and violent behavior by Oliver did not show a pattern of harassing and intimidating behavior, evidence of what occurred on August 3, 2009, is more than sufficient to do so. On that day, Oliver repeatedly violated the protective order by (1) calling Goss, (2) appearing at her home, (3) knocking on her door, (4) yelling and screaming at Goss, (5) demanding that Goss allow her inside the residence, and (6) refusing to leave the property despite numerous requests by Goss. Suffice it to say, this clearly amounts to a series of successive actions that would authorize the trial court to find a pattern of harassing and intimidating behavior by Oliver toward Goss.[15]

2. Goss further contends that the evidence was insufficient to support her conviction because the State failed to prove that her contact with Goss on the day she

---

[14] *See Hervey v. State*, 308 Ga. App. 290, 291-92 (707 SE2d 189) (2011) (holding that evidence was sufficient to support defendant's aggravated stalking conviction even though victim did not provide specific details regarding defendant's pattern of harassing and intimidating behavior).

[15] *See Herbert*, 311 Ga. App. at 399 n.4 (holding that defendant's series of actions toward the victim on the day he violated the protective order was sufficient evidence that defendant engaged in a pattern of harassing and intimidating behavior).

violated the protective order was done for the purpose of harassing and intimidating Goss. Again, we disagree.

To begin with, a defendant need not engage in "unequivocally hostile conduct or make explicit threats in order to be convicted of stalking."[16] And even behavior that is not overtly threatening can provide "the requisite degree of intimidation and harassment if it is ongoing, repetitious, and engaged in despite the communicated wishes of the victim."[17]

In this matter, although Oliver testified that she called Goss and went to her home not for purposes of harassment but rather to seek help after she took a number of tranquilizers in an attempt to commit suicide, "it was solely for the [trial court], viewing that testimony in light of the other evidence, to assess [Oliver's] credibility and determine whether [her] testimony was truthful."[18] And given that Oliver contacted Goss rather than calling an ambulance herself, and then had a friend drive

---

[16] *Placanica v. State*, 303 Ga. App. 302, 304 (693 SE2d 571) (2010) (punctuation omitted).

[17] *Id.* (punctuation omitted); *see Maskivish v. State*, 276 Ga. App. 701, 703 (1) (b) (624 SE2d 160) (2005) (noting that a defendant's conduct need not be overtly threatening to constitute stalking).

[18] *Louisyr*, 307 Ga. App. at 730 (1).

her to Goss's home instead of to a hospital (at which point she belligerently yelled and screamed at Goss to let her inside the home), there was certainly evidence authorizing the trial court to be skeptical of her testimony. Indeed, if the trial court concluded that her testimony "was not truthful, as we must assume it did, the [trial court] was entitled to take [her] untruthfulness as substantive and affirmative evidence of [her] guilt."[19]

3. Oliver also contends that the trial court erred in finding that she knowingly waived her right to a jury trial. Once again, we disagree.

It is well established that a criminal defendant must "personally and intelligently participate in the waiver of the constitutional right to a trial by jury."[20] It is equally well established that when the purported waiver of this right is called into question, the State bears the burden of demonstrating that

> the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the

---

[19] *Id.* (punctuation omitted).

[20] *Seitman v. State*, 320 Ga. App. 646, 646 (740 SE2d 368) (2013) (punctuation omitted).

9

use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.[21]

And such extrinsic evidence may include "testimony by defense counsel in the motion for new trial hearing about his specific recollections, *routine, or standard practices*; an affidavit from trial counsel about his specific recollections; and evidence regarding the defendant's intelligence and cognitive ability."[22] Furthermore, the question of whether a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is "to be answered by the trial judge and will be accepted by this court unless such determination is clearly erroneous."[23]

Here, as noted *supra*, nearly two weeks before her scheduled trial, Oliver's counsel filed a waiver of jury trial, which both Oliver and her counsel signed. And at the beginning of her trial, the trial court asked Oliver's counsel if she was waiving her right to a jury trial and counsel—in Oliver's presence—responded affirmatively.

---

[21] *Id.* (punctuation omitted); *accord Balbosa v. State*, 275 Ga. 574, 575 (1) (571 SE2d 368) (2002).

[22] *Jones v. State*, 294 Ga. App. 169, 170 (1) (670 SE2d 104) (2008) (punctuation omitted) (emphasis supplied).

[23] *Seitman*, 320 Ga. App. at 646 (punctuation omitted); *accord Jones*, 294 Ga. App. at 169 (1).

10

Furthermore, although Oliver's trial counsel testified at the motion-for-new-trial hearing that she did not have a specific recollection of discussing waiving a jury trial with Oliver, she indicated that it was her usual practice to do so. Additionally, Oliver's trial counsel stated that she routinely discusses trial strategy with her clients and testified in some detail regarding the fact she thought a bench trial would be a better tactic in Oliver's situation because a judge—as opposed to a jury—would be more amenable to a defense based on Oliver's mental health issues. Oliver did not testify during the motion-for-new-trial hearing and presented no evidence contradicting her counsel's testimony. Accordingly, given Oliver's signature on the waiver of jury trial and the extrinsic evidence in the form of Oliver's trial counsel's testimony regarding the fact that she routinely discusses such waiver and trial strategy issues with her clients, we cannot conclude that the trial court was clearly erroneous in finding that Oliver knowingly and intelligently waived her right to a jury trial.[24]

---

[24] *See Seitman*, 320 Ga. App. at 646-48 (holding that defendant's signature on a waiver of right to jury trial and her counsel's testimony that he discussed waiver with her supported trial court's conclusion that defendant knowingly and intelligently waived her right to a jury trial); *Jackson v. State*, 257 Ga. App. 715, 717 (4) (572 SE2d 60) (2002) (holding that defendant's signature on waiver of jury trial form supported trial court's finding that defendant knowingly waived his right to a jury trial). *Compare Balbosa*, 275 Ga. at 575 (1) (holding that State failed to establish that defendant knowingly and intelligently waived his right to jury trial when the record showed *only* oral waiver by counsel in appellant's presence).

*Judgment affirmed. Andrews, P. J., and McMillian, J., concur.*